FILED: 12/7/2022 4:08 PM
Vickie Edgerly, District Clerk
Orange County, Texas
Envelope No. 70800162
Reviewed By: Maria Hernandez

CAUSE NO.: 220081-C

| | | |
|---|---|---|
| GREGORY BECKETT and<br>MARCY BECKETT | §<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§ | ORANGE COUNTY, TEXAS |
| BOBBY CROWSON | § | 260TH JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, GREG BECKETT and MARCY BECKETT, and file this Plaintiffs' First Amended Petition against Defendants, BOBBY CROWSON and ALLSTATE VEHICLE AND PROPERTY INSURANCE CO., and respectfully show the Court the following:

## I.
## PARTIES

1.  Plaintiffs, GREG BECKETT and MARCY BECKETT, are individuals residing in Orange County, Texas.

2.  Defendant, BOBBY CROWSON, TDI license #1542054, NPI #8957289, is a resident of Walker County, Texas. This Defendant has filed an answer and is before the Court for all purposes.

3.  Defendant, ALLSTATE VEHICLE AND PROPERTY INSURANCE CO., is an insurance company doing business in the State of Texas and may be served with process by serving its registered agent for service in Texas: **CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201-3136.**

1

## II.
## JURISDICTION AND VENUE

4. Venue of this matter is properly before this Court pursuant to the provisions §15.002(1) of the Texas Civil Practices and Remedies Code in that all or part of the events or omissions giving rise to this claim occurred in Orange County, Texas. Venue is proper pursuant to §15.032 in that policyholder resides in Orange County at the time the cause of action occurred.

5. The damages sought are within the jurisdictional limits of this Court and includes monetary relief of over $200,000 but less than $1,000,000.

6. Pursuant to the "where lawsuits may be brought" provision of the policy at issue, this court has jurisdiction.

## III.
## DISCOVERY CONTROL PLAN

7. Plaintiffs intend to conduct discovery under level 2 of Rule 190 of the Texas Rules of Civil Procedure.

## IV.
## FACTS

8. At all times relevant, the Becketts owned their home at 6640 16th St., Orange, Orange County, Texas. The home was insured by Allstate Vehicle and Property Insurance Company under Policy No. 844946847.

A. **Windspeed**

9. The Beckett home was damaged on or about August 26-27, 2020. A claim was timely and properly made under this policy and was assigned Claim No. 0598127090.

10. It is undisputed by Defendants' own "expert", Forte Engineering, that sustained winds were at least 94 mph at the home. At one point, after recording wind speed, the Orange County wind monitoring equipment failed; 132 mph gusts were recorded 25 miles east, 110 mph gusts 18 miles

east per Overall National Oceanic and Atmospheric Association Data. It is an industry-wide accepted calculation that peak gust speeds are plus or minus 20% of the sustained wind. Using Defendants' wind speed expert, gusts would be in the range of 75 mph to 112.8 mph.

### B.     Selected Claim Handling Chronology

11.    On September 2, 2020, the Beckett's were contacted by Adjuster Bobby Crowson.

12.    On September 6, 2020, the dwelling and other structure were "inspected".

13.    After the inspection, Mr. Crowson emailed the Becketts a "Texas Home Inspection Checklist" for the Beckett's to complete to "assist" in the investigation.

14.    On September 7, 2020, Mr. Crowson's estimate was completed and sent to the carrier.

15.    On September 8, 2020, Mr. Crowson generated his report. The inadequate and not fully investigated estimate provided for an RCV of $28,466.61. Less depreciation and deductible there was an ACV value of $24,784.70.

16.    On September 8, 2020, Mr. Crowson sent a self-serving "settlement" letter to the Becketts claiming that the Becketts had reached a "settlement agreement" with him/Allstate Vehicle and Property Insurance Company.

15.    The Becketts immediately disputed the Crowson estimate. Unfortunately for the Becketts, they were forced to start dealing with many other Allstate employees besides Mr. Crowson.[1]

17.    On December 14, 2020, Huerta Homes, Inc., which had previously inspected the roof and determined storm damage necessitated a completed replacement, prepared and estimate to replace the storm damaged roof.

---

[1] These employees include: Bobby Crowson, Jamil Teal, Joseph Carey, Ashley Taylor, Aneesha Ukandu, Dwain Andrepoint, Shayla Boone, Tankisha Ivory, Daniel Ballanger (Corporate Adjuster), Susan Harris, and an unknown employee in Little Rock, Arkansas which Plaintiff spoke by phone (# 501-920-3509) on 02/23/2021.

18. On January 22, 2021, the Becketts hired an engineer, S&R Consulting, to inspect the home. The S&R windspeed data was incorrect. Nonetheless, S&R did attribute roof/shingle structural damage to a wind event.

19. The S&R report and the Huerta Homes, Inc. estimate were provided to Allstate.

20. Crowson - accepted responsibility for some of the storm-covered damage, but denied most other elements of the storm-covered damage. To pretextually support the claim, Crowson and another adjuster, Montecalvo engaged Forte Consulting & Investigations. Forte concluded 94 mph sustained winds buffeted the home. The February 17, 2021 report noted that "spot repairs should be possible, but could be somewhat difficult".

21. The Forte investigation took place on or about some unknown date. The dates are unknown because the report does not state when the inspection incurred. The report was generated on or about February 17, 2021.

22. There was no real mention in any other Allstate reports about the reported loss of electrical services and structural damage to the facades of the home. There was no discussion about how losing power caused damage to the home. There was no consideration for interior damage or the effect of the loss of power caused by the storm ripping the electrical service off of the house facade.

23. More than a week after receipt of the report, adjuster Susan Harris, relying on the prior adjusters' "investigation(s)" spoke with the Becketts by phone, advising she would forward the Forte report (that found no real damage) by email that day.

24. No additional payments were made after the Forte report.

25. As a result of Crowson and Allstate's handling and investigation of the claims leading to a woefully inadequate report and futile attempts by the Becketts to have the claim reasonably adjusted, the Becketts were forced to hire an attorney.

26. In support of the Beckett's claim, the Becketts hired Terry Shipman with Shipman Engineering. Mr. Shipman believes the windspeed at the Beckett home was higher than that postulated by Forte. The Becketts also hired Elite Claims and Consulting to prepare a repair adjustment/estimate.

27. The adjusters' "investigation(s)" failed to account for a substantial amount of storm-related damage. They attempted to force an unsophisticated insured who was under duress of having their home damaged to investigate their own claim rather than performing their own required investigation(s).

28. Mr. Shipman's report notes damage in a number of areas of both the dwelling and other structure that, within a reasonable degree of engineering certainty, sustained damage during the August 26-27th hurricane. Many of these rooms were *not* provided for in the Forte report.

29. Tony Bunn also inspected the home. Based on his inspection, in conjunction with Mr. Shipman's report, Mr. Bunn prepared an estimate of the reasonable costs associated to repair the damages to the dwelling and other structure that, more likely than not, were caused by Hurricane Laura. The total repair cost is $130,173.18.

30. The initial adjuster, Crowson, performed a cursory investigation. There was no reasonable investigation to determine what damages had truly been caused by the in-excess of 110 mph winds at the Beckett home. There was no attempt to perform an independent and reasonable investigation. At best, Crowson demanded that a distraught and distracted insured investigate his/her own claim. The adjusters and engineer only looked at what the insured noted. The adjusters and engineers did not perform a reasonable investigation into the claim. The engineer report was pretextual.

31. The estimate that was generated from the report was woefully inadequate. The hiring of an engineer to give pretextual support for the initial adjustment is unconscionable.

## V.
## CAUSES OF ACTION

### A. Breach of Contract

32. Allstate Vehicle and Property Insurance Company has breached the terms of its contract with the Becketts by failing to timely and properly investigate and pay for damages that are owed under the contract. All conditions precedent to recovery have been met. The failure to pay constitutes a material breach of the contract. The Becketts were in compliance with all material terms of the contract.

### B. §541.060 "Unfair Settlement Practices"

33. Mr. Crowson and Allstate violated §541.060 "unfair settlement practices" in that they failed to attempt in good faith an effectuated proper and equitable settlement of the Plaintiffs' claim with respect to which its liabilities become reasonably clear:

34. Mr. Crowson and Allstate failed to provide the Becketts a reasonable explanation of the basis in the policy in relation to the facts or applicable law for its denial or delay of the claim or offer to compromise the settlement of the claim;

35. Allstate failed within a reasonable time to affirm or deny coverage to the Becketts;

36. Allstate failed within a reasonable time to submit a reservation of rights letter to the Becketts;

37. Allstate made the claim process unconscionably difficult by assigning at least 12 different adjusters to the Beckett claim.

38. Mr. Crowson and Allstate refused to pay the full claim without conducting a reasonable investigation with respect to the claim.

C. §542.

39. The acts or omissions of Mr. Crowson and Allstate constitute a violation of Chapter §542, Unfair Claim Settlement Practices, including a violation of §542.03(a), (b) (1), (2), (3), (4) and (5).

40. The acts or omissions of Allstate and Mr. Crowson above also constitute violations of §542 prompt payment of claims. Specifically, acts or omissions constitute violations of §542.055 and §542.056 and §542.57 and 58.

D. §541.151 Catchall/DTPA

41. Under §541.151, the acts or omissions of Defendants as described above also constitutes a violation of 17.6(b) of the Business and Commerce Code and, therefore, give rise to the cause of action under the insurance code. The acts or omissions above constitute violations of Texas Deceptive Trade Practice Act §17.46 (b) (2), (5), (7), (8), (9), (12) and (24).

42. All of the above are unconscionable.

## VI.
## CONDITIONS PRECEDENT

43. The Defendants' "handling" has delayed resolution of an owed loss to the insureds, created hardship on the insureds and increased attorney fee expenses to its insureds.

44. There has been full compliance by the Beckett's with all policy terms. All conditions precedent to recovery have been met.

## VII.
## DAMAGES

45. As a result of the acts and omissions listed above, Plaintiffs suffered damages. Defendants are liable for the following, including but not limited to:

   a. Amount owed under the contract - $101,706.57 ($130,173.18 – prior payments, depreciation and deductible);

   b. Interest on the amount since October 2020;

   c. Mental anguish damages for the knowing violations of the Insurance Code and DTPA in the amount as follows:

   (1) Mr. Beckett - $100,000;
   (2) Mrs. Beckett - $100,000.

   d. Punitive/exemplary damages as follows:

   (1) Mr. Beckett - $50,000;
   (2) Mrs. Beckett - $50,000.

   e. Reasonable and necessary attorney's fees incurred to date of $13,000; and

   f. Reasonable and necessary expenses, including expert fees of $2,483.64.

39. The acts and omissions of the Defendants are the proximate cause of all damages sustained by Plaintiffs. Plaintiffs sue for all damages Plaintiffs are legally entitled to recover.

## VIII.
## RULE 193.7 NOTICE

40. Pursuant to Texas Rule of Civil Procedure 193.7, Plaintiffs hereby put Defendants on notice that Plaintiffs intend to use produced documents against Defendants in pretrial proceedings and at trial in accordance with such rights and privileges enabled by Rule 193.7. Accordingly, production of a document in response to Plaintiffs' discovery requests authenticates the document(s) for use against Defendants in any pretrial proceeding or at trial unless Defendants object to the authenticity of any produced document(s) within the time limits as set out in Rule 193.7.

## IX.
## RULE 194 REQUEST FOR DISCLOSURE

41. Under Texas Rule of Civil Procedure 194, Plaintiffs request that Defendants disclose within 50 days of the service of this request, the information or material described in Rule 194.2.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein as the law directs, and that upon final hearing, Plaintiffs have and recover judgment of and from Defendants a sum in excess of the minimum jurisdictional amounts of this Court, costs of court, pre-judgment and post-judgment interest which may be authorized by law, and for such other and further relief, both general and special, at law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

WELLER, GREEN, TOUPS &TERRELL, L.L.P.
P O BOX 350
BEAUMONT, TEXAS 77704
(409) 838-0101
(409) 832-7823 (FAX)
hartgr@wgttlaw.com

_____
E. HART GREEN
STATE BAR NO. 08349290

**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record via e-serve on this ___ day of December 2022.

_____
E. HART GREEN

9