FILED: 1/6/2023 12:00 PM
Anne Reed, District Clerk
Orange County, Texas
Envelope No. 71556317
Reviewed By: Justin Rhodes

CAUSE NO. 220081-C

| | | |
|---|---|---|
| GREGORY BECKETT and MARCY BECKETT, | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | ORANGE COUNTY, TEXAS |
| BOBBY CROWSON, | § § § | |
| Defendant. | § | 260th JUDICIAL DISTRICT |

**DEFENDANT ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' FIRST AMENDED PETITION**

1. Defendant Allstate Vehicle and Property Insurance Company files this Answer to Plaintiffs' First Amended Petition. Without waiving any of the defenses under the policy of insurance under which Plaintiffs purport to be claiming in this lawsuit, and still insisting upon any and all policy conditions, exclusions, and other policy terms now or later arising, Allstate respectfully shows the Court as follows:

## I.
## GENERAL DENIAL

2. As authorized by Rule 92 of the Texas Rules of Civil Procedure, Allstate generally denies all of the material allegations contained in Plaintiffs' First Amended Petition and any amended or supplemental petition that Plaintiffs may file in this lawsuit. In accordance with Texas law, Allstate demands that Plaintiffs prove, by credible evidence meeting the requisite standard of proof, each and every allegation made and contained in this case.

## II.
## SPECIFIC DENIALS AND AFFIRMATIVE DEFENSES

3. Allstate specifically denies that Plaintiffs have complied with all conditions precedent to coverage under the insurance policy contract pursuant to which Plaintiffs have presented the

insurance claim made the basis of this action and that Plaintiffs have complied with all conditions precedent to bringing this cause of action.

4.     Allstate specifically denies that it violated any of the Texas Insurance Code or Deceptive Trade Practices Act provisions alleged by Plaintiffs, and that any of its alleged actions or omissions concerning Plaintiffs' claim, which Allstate denies, were done knowingly, intentionally, or in bad faith.

5.     **POLICY TERMS, CONDITIONS AND LIMITS**. Any recovery will be subject to the policy limits and policy terms, conditions, exclusions, and limitations. The limit of liability applicable to the dwelling at issue is $299,000, with Other Structures Protection of $74,750 and a personal property limit of $224,250. Additional Living Expenses are limited to up to 24 months and not to exceed $119,600.

6.     **DEDUCTIBLE**. Any recovery will be subject to the amount of the applicable deductible within the insurance policy. The deductible for Tropical Cyclone is $5,980.

**TROPICAL CYCLONE DEDUCTIBLE ENDORSEMENT – APC548-1**

It is agreed that **your** policy is amended as follows:

I.     Under **Definitions Used In This Policy**, the following definitions are added:

**Hurricane** – means a weather system declared by the **National Weather Service** to be a hurricane.

**National Weather Services** – means the National Weather Service or, if the National Weather Service ceases to exist, ceases to perform the function of declaring weather systems to be hurricanes or tropical storms, or ceases to perform the function of issuing hurricane watches or hurricane warnings, such other entity as determined by **us**.

**Tropical cyclone** – means a **hurricane,** a **tropical storm**, or any wind, hail, rain, snow, or sleet accompanying a **hurricane** or a **tropical storm.**

\*     \*     \*

7.  **DAMAGES AND LOSS CAUSED BY SOMETHING OTHER THAN THE ALLEGED AUGUST 26-27, 2020 STORM.** Plaintiffs' claims are barred, in whole or in part, to the extent the damages and losses alleged in Plaintiffs' First Amended Petition, none being admitted, pre-existed or post-dated the alleged date of loss and/or pre-dated the policy inception.

8.  **CONCURRENT CAUSATION**. Allstate asserts the defense of concurrent causation. Under the doctrine of concurrent causes, an insured's recovery is limited to the amount of damage caused by a covered peril.[1] In other words, when a loss is caused by covered and non-covered perils, the insured may recover only that portion of the damage caused solely by the covered peril.[2] Because the insured is required to prove that the damage is covered by the policy, which in this case has an applicable policy period of June 5, 2020 through June 5, 2021, the burden of segregating the damage attributable solely to the covered peril from the damage attributable to the non-covered peril is a coverage issue on which the insured bears the burden of proof.[3]

9.  **COVERAGE IS LIMITED TO SUDDEN AND ACCIDENTAL DIRECT PHYSICAL LOSS DURING THE POLICY PERIOD.** Pursuant to the following provision of the Policy, Coverages A, B and C are limited to sudden and accidental direct physical loss:

> **GENERAL**
>
> \*   \*   \*
>
> **Insuring Agreement**
>
> In reliance on the information **you** have given **us, we** agree to provide the coverages indicated on the Policy Declarations, In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any changes in title, use or occupancy of the **residence premises**.

---

[1] *Wallis v. United Servs. Automobile Ass'n*, 2 S.W.3d 300, 302-03 (Tex. App.—San Antonio 1999, pet. denied).
[2] *Hamilton Properties v. The American Insurance Co.,* 2014 WL 3055801, CA 3:12–CV–5046–B (July 7, 2014) (Boyle, J.); *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971); *Wallis*, 2 S.W.3d at 303.
[3] *Hamilton,* 2014 WL at \*4; *Wallis*, 2 S.W.3d at 303 n.5.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

\*       \*       \*

**SECTION I – YOUR PROPERTY**

\*       \*       \*

**Losses We Cover Under Coverages A, B and C:**
**We** will cover **sudden and accidental** direct physical loss to the property described in **Dwelling Protection--Coverage A**, **Other Structures Protection –Coverage B or Personal Property Protection – Coverage C** caused by the following except as limited or excluded in this policy:

\*       \*       \*

There is no coverage for the repair or replacement of undamaged property since there is no sudden and accidental direct physical loss caused by a covered cause of loss. There is also no coverage for damage unrelated to this date of loss and/or which predates the policy period.

10.    **DUE PROCESS.** To the extent Plaintiffs seeks punitive damages, Allstate invokes its right under the due process clause of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment of the United States Constitution. Allstate affirmatively pleads that Plaintiffs' pleading of punitive and/or exemplary damages violates the due process clauses of the Fifth and Fourteenth Amendments.

11.    **PUNITIVE DAMAGES IMPROPER AND SUBJECT TO LIMITATIONS.** To the extent Plaintiffs seek punitive damages against Allstate, assessment of punitive damages is improper because Plaintiffs failed to plead any predicate authorizing the recovery of punitive damages. Plaintiffs are unable to establish, by credible evidence meeting the requisite standard of proof, that Allstate was actually aware of any harm which Plaintiffs alleges to have sustained as a

result of the handling of Plaintiffs' insurance claim; therefore, Plaintiffs are not entitled to any alleged exemplary or punitive damages because Plaintiffs are unable to prove that Allstate was actually aware of an extreme risk resulting from the handling of Plaintiffs' claim. Further, Plaintiffs are unable to establish, by clear and convincing evidence, that Allstate acted with malice; therefore, under section 41.001(7) of the Texas Civil Practice and Remedies Code, Plaintiffs are not entitled to any supposed exemplary or punitive damages that Plaintiffs alleges in this lawsuit. Further, any award of punitive damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) two times the amount of economic damages plus $200,000, pursuant to the statutory mandates of Texas Civil Practice & Remedies Code Section 41.002-41.009.

12. **TEXAS INSURANCE CODE AND DECEPTIVE TRADE PRACTICES ACT CLAIMS.** Plaintiffs' claims under the Texas Insurance Code and the Deceptive Trade Practices Act are barred because, among other things, (a) Allstate did not breach the insurance policy under which Plaintiffs purports to be claiming in this lawsuit; (b) Plaintiffs have not sustained any damages independent of Plaintiffs' alleged breach-of-contract theory; (c) the handling and investigation of Plaintiffs' insurance claim was reasonable; (d) any alleged liability for Plaintiffs' insurance claim did not become and is not reasonably clear; and (e) there is a bona fide coverage dispute concerning Plaintiffs' insurance claim and the policy of insurance under which Plaintiffs purport to be claiming in this lawsuit. Allstate had a reasonable basis for its conduct based upon the claim investigation. A mere bona fide coverage dispute does not constitute a breach of any duty of good faith and fair dealing to any extent alleged by Plaintiffs in this lawsuit. Moreover, a bona fide controversy exists in the valuation of Plaintiffs' claim and liability, if any, under the contract. Therefore Plaintiffs' extra-contractual causes of action are precluded.

13. **LACK OF COVERAGE PRECLUDES EXTRA-CONTRACTUAL LIABILITY.** The existence of coverage and/or compensable damage for Plaintiffs' underlying insurance claims is mandatory to establish the basis of Plaintiffs' claims under the Texas Insurance Code and the common law. Because Plaintiffs' allegations are generally based upon Allstate's alleged failure to pay policy benefits, and differences in price and scope or repairs to the property at issue, the absence of coverage for many portions of Plaintiffs' underlying insurance claim precludes Plaintiffs' Insurance Code and extra-contractual claims against Allstate arising out of those allegations.

14. **EXCESSIVE DEMAND DOCTRINE.** Plaintiffs' claim for recovery of their alleged attorney fees is barred in whole or in part, or is subject to limitation or reduction, pursuant to the excessive demand doctrine.[4] Plaintiffs' claim for attorney fees may be further reduced by the provisions of Texas Insurance Code 542A.007.

15. **CREDIT/OFFSET.** Allstate is entitled to a credit or offset against Plaintiffs' damages, if any, in the amount of Plaintiffs' deductible and any prior sums paid by Allstate.

16. **ACCORD AND SATISFACTION.** Plaintiffs' claims are barred by the doctrine of accord and satisfaction. Allstate has already paid all monies that Plaintiffs could possibly allege to be owed.

17. **PAYMENT.** Plaintiffs' claims are barred by the doctrine of payment. Allstate issued complete payments to Plaintiffs for repair and/or replacement of their property allegedly damaged by the peril at issue.

---

[4] *See, e.g., Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 65 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citations omitted).

18. **STATUTE OF LIMITATIONS**. Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations set forth in the insurance policy and/or by controlling law with respect to each of Plaintiffs' individual causes of action.

19. **LOSS SETTLEMENT PROVISION/CONDITION: REPLACEMENT COST BENEFITS**. Under the insuring agreement, Plaintiffs must first repair or replace the damaged property to recover replacement cost benefits. The Policy provides:

> **SECTION I – CONDITIONS**
>
> \*       \*       \*
>
> 6.   **How We Pay For a Loss**
>
>> Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C**, payment for covered loss will be by one or more of the following methods:
>
> \*       \*       \*
>
>> b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.
>>
>> **You** may make claim for additional payment as described in paragraph c) and paragraph d) below if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 365 days after the loss unless **you** request in writing that this time limit be extended for an additional 180 days.
>
> \*       \*       \*

Plaintiffs lack proof of completed repairs or replacement to their covered property damage connected with their insurance claim. As such, Plaintiffs' recovery in this case, if any, is currently limited to the actual cash value of the covered property damage.

20. **LOSSES NOT INSURED.** Pursuant to the following provisions of the Policy, the following losses do not come within the policy's coverage:

**SECTION I – YOUR PROPERTY**

\*        \*        \*

**Losses We Cover Under Coverages A, B and C:**

\*        \*        \*

2. **Windstorm** or hail.

    **We** do not cover:

    a)   loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;

\*        \*        \*

**Losses We Do Not Cover Under Coverages A, B and C:**

A. Under **Dwelling Protection–Coverage A, Other Structures Protection– Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

   1. Flood, including but not limited to, surface water, waves, tidal water or overflow of any body of water or spray from any of these, whether or not driven by wind.

   2. Water or any other substance that backs up through sewers or drains.

   3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

5. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, Erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water. We do cover sudden and accidental direct physical loss caused by fire or explosion resulting from earth movement.

6. Actions taken by civil, governmental or military authorities: a) to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of any building structure, other structure or land at the residence premises;

\*     \*     \*

12. Weather Conditions that contribute in any way with an event, peril or condition excluded under **Losses We Do Not Cover Under Coverages A, B and C** to produce a loss.

B. Under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or other microbes. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or other microbes arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

\*     \*     \*

C. When loss is not excluded under Paragraph A or paragraph B of **Losses We Do Not Cover Under Coverages A, B and C,** and there are two or more causes of loss to the covered property, **we** do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D, immediately below.

D. Under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following

excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

\* \* \*

1. The failure of any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

\* \* \*

3. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance;

    of property whether on or off the **residence premises** by any person or organization

\* \* \*

21. **LIMITATIONS ON COVERAGE.** Pursuant to the following provision of the Policy, the following limitations apply:

**SECTION I – ADDITIONAL PROTECTION**

1. **Additional Living Expense**[5]

    **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection – Coverage A, Other Structures Protection – Coverage B, or Personal Property Protection – Coverage C** makes **your residence premises** uninhabitable. However, additional living expenses due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot or Other Microbes Remediation as a Direct Result of a Covered Water Loss.**

---

[5] From Texas Amendatory Endorsement – AVP348.

Payment for additional living expenses as a result of a covered loss under **Dwelling Protection – Coverage A, Other Structures Protection – Coverage B, or Personal Property Protection – Coverage C** will be limited to the least of the following:

a) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;

b) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or

c) 24 months.

These periods of time are not limited by the termination of this policy.

In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

All other policy terms and conditions apply.

\*      \*      \*

**SECTION I – CONDITIONS**

\*      \*      \*

21.   **Mold, Fungus, Wet Rot And Dry Rot or Other Microbes Remediation as a Direct Result of a Covered Water Loss**:

In the event of a covered water loss under **Dwelling Protection – Coverage A, Other Structures Protection – Coverage B, or Personal Property Protection – Coverage C**, we will pay up to $5,000 for mold, fungus, wet rot or dry rot or other microbes **remediation**.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Dwelling Protection – Coverage A, Other Structures Protection – Coverage B, or Personal Property Protection – Coverage C** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain

**your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Dwelling Protection – Coverage A, Other Structures Protection – Coverage B, or Personal Property Protection – Coverage C.**

22.  **SPECIFIC DENIAL OF CONDITIONS PRECEDENT.** Pursuant to Texas Rules of Civil Procedure 54 and 93, Allstate files a verified specific denial[6] of Plaintiffs' claim that "[a]ll conditions precedent to recovery have been met."[7] Pursuant to the following provisions of the Policy, Plaintiffs' claims are barred by their failure to comply with the following policy conditions in the event that Allstate was prejudiced by that failure:

**SECTION I – CONDITIONS**

\*    \*    \*

3.  **What You Must Do After A Loss.**[8]

    In the event of a loss to any property that may be covered by this policy, **you** must:

    (a) promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible.

    (b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.

    (c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.

    (d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.

---

[6] See <u>Exhibit A</u>.
[7] *See* Plaintiffs' First Amended Petition at para. 32, 44.
[8] From Texas Amendatory Endorsement – AVP345.

(e) produce receipts for any increased costs to maintain **your** standing of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.

(f) as often as **we** reasonably require:

   (1) show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent us from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.

\*     \*     \*

**We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

\*     \*     \*

13.   **Action Against Us.**

No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I** Conditions applies, unless:

(a) there has been full compliance with all policy terms; and

(b) the action is commenced within two years and one day from the date the cause of action first accrues; and

(c) in the event that **you** and **we** fail to agree on the amount of loss claimed by **you**, unless **you** have previously provided to **us** a signed sworn proof of loss, it is a condition under this **Action Against Us** provision that no later than 91 days prior to commencing any action against **us** that **we** receive from **you** a signed sworn proof of loss, which contains, to the best of **your** knowledge and belief, the following information:

   (1)   the date, time, location and cause of loss;

   (2)   the interest **insured persons** and others have in the property, including any encumbrances;

   (3)   any other insurance that may cover the loss;

(4) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;

(5) at **our** request, the specifications of any damaged **building structure** or other structure;

(6) the estimated or actual cost to repair or replace the property stolen or damaged by the loss with materials of like kind and quality;

(7) the amount **you** have actually spent to repair or replace the property stolen or damaged by the loss; and

(8) in the event that **you** give **us** a signed proof of loss, and after submitting that to **us**, **you** determine that you want to include a claim for additional damage or loss, **you** must submit to **us** a supplemental proof of loss which identifies the amount of the additional loss for each item damaged or stolen.

\*       \*       \*

## III.
## PRAYER

23.    Defendant Allstate Vehicle and Property Insurance Company prays that, upon final trial and hearing of this lawsuit, Plaintiffs take nothing and that Allstate recovers its costs, fees, and expenses, and for such other and further relief to which Allstate may show itself justly entitled, both in law and at equity.

Respectfully Submitted,

*/s/ Susan E. Egeland*
SUSAN E. EGELAND
State Bar No. 24040854
susan.egeland@faegredrinker.com
SARA E. INMAN
State Bar No. 24073098
sara.inman@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
(469) 357-2500
(469) 327-0860 (fax)

**ATTORNEYS FOR DEFENDANT ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via eFile Texas on January 6, 2023.

*/s/ Susan E. Egeland*
SUSAN E. EGELAND

# EXHIBIT A

**CAUSE NO. 220081-C**

| | | |
|---|---|---|
| **GREGORY BECKETT and** | § | **IN THE DISTRICT COURT OF** |
| **MARCY BECKETT,** | § | |
| | § | |
|     **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **ORANGE COUNTY, TEXAS** |
| | § | |
| **BOBBY CROWSON,** | § | |
| | § | |
|     **Defendant.** | § | **260th JUDICIAL DISTRICT** |

**DECLARATION (IN LIEU OF AFFIDAVIT) IN SUPPORT OF
DEFENDANT ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY'S
<u>ANSWER TO PLAINTIFFS' FIRST AMENDED PETITION</u>**

**STATE OF TEXAS** §
                         §
**COUNTY OF TARRANT** §

    I, Susan Egeland, declare and state as follows, in accordance with Texas Civil Practice and Remedies Code Section 132.001(a):

    "I am over the age of 18 (DOB 8/9/78), have never been convicted of a felony or crime involving moral turpitude and am duly qualified and competent to execute this affidavit and the facts contained herein are true and correct based upon the knowledge I obtained from review of the claim-related materials pertaining to this matter. My name is Susan Elizabeth Egeland. My office address is Faegre Drinker Biddle & Reath LLP, located at 1717 Main Street, Suite 5400, Dallas, Texas 75201, and I am one of the attorneys representing Defendant Allstate Vehicle and Property Insurance Company in this lawsuit.

    I have read Defendant Allstate Vehicle and Property Insurance Company's Answer to Plaintiffs' First Amended Petition, and declare under penalty of perjury that the facts stated therein, specifically at paragraph no. 22, are true and correct to the best of my present knowledge, information and belief."

---

**DECLARATION TO ALLSTATE'S ANSWER TO PLAINTIFFS' FIRST AMENDED PETITION**     **PAGE 1**
US.354785331.01

Executed in Tarrant County, State of Texas on January 6, 2023.

_____
Susan Elizabeth Egeland
Counsel for Defendant

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Danette Dykema on behalf of Susan Egeland
Bar No. 24040854
Danette.dykema@faegredrinker.com
Envelope ID: 71556317
Status as of 1/6/2023 1:08 PM CST

Associated Case Party: Gregory Beckett

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Hart Green | | hgreendoc@wgttlaw.com | 1/6/2023 12:00:07 PM | SENT |

Associated Case Party: Bobby Crowson

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Lisa Fiorenza | | LisaFiorenza@MehaffyWeber.com | 1/6/2023 12:00:07 PM | SENT |
| Wesley R.Ward | | hcdocket@hope-causey.com | 1/6/2023 12:00:07 PM | SENT |
| Barbara JaneBarron | | barbarabarron@mehaffyweber.com | 1/6/2023 12:00:07 PM | SENT |
| Denise Geheb | | denisegeheb@mehaffyweber.com | 1/6/2023 12:00:07 PM | SENT |
| Carmen Garcia | | edocket@mehaffyweber.com | 1/6/2023 12:00:07 PM | SENT |

Associated Case Party: Marcy Beckett

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Hart Green | | hgreendoc@wgttlaw.com | 1/6/2023 12:00:07 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kelly Olson | | kelly.olson@faegredrinker.com | 1/6/2023 12:00:07 PM | SENT |
| Stephanie M.Stephens | | stephanie.stephens@faegredrinker.com | 1/6/2023 12:00:07 PM | SENT |
| Danette Dykema | | Danette.dykema@faegredrinker.com | 1/6/2023 12:00:07 PM | SENT |

Associated Case Party: Allstate Vehicle and Property Insurance Company

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Danette Dykema on behalf of Susan Egeland
Bar No. 24040854
Danette.dykema@faegredrinker.com
Envelope ID: 71556317
Status as of 1/6/2023 1:08 PM CST

Associated Case Party: Allstate Vehicle and Property Insurance Company

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Sara Inman | | sara.inman@faegredrinker.com | 1/6/2023 12:00:07 PM | SENT |
| Susan Egeland | | susan.egeland@faegredrinker.com | 1/6/2023 12:00:07 PM | SENT |